Argued April 4, reversed April 25, 1951

# WISEMAN ET AL. *v.* MITCHELL
230 P. 2d 534

*William R. Thomas* argued the cause for appellant. With him on the brief were Rhoten & Rhoten, of Salem, and Morley & Thomas, of Lebanon.

*C. S. Emmons* argued the cause for respondents. On the brief were Willis, Kyle & Emmons, of Albany.

Before BRAND, Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

LATOURETTE, J.

Plaintiffs recovered judgment against defendant in the sum of $500.00 arising out of timber transactions hereinafter set out. From such judgment, defendant appeals.

On the 17th day of January, 1946, plaintiffs entered into a contract in writing with David Niess and Elizabeth Niess, then owners of certain lands on which there was down and growing timber. This contract, in which the Niesses are parties of the first part, and the Wiseman Lumber Company is party of the second part, so far as pertinent, reads:

"That for and in consideration of the sum of $750.00 paid to parties of the first part parties of the first part do hereby sell all the standing and down timber now on that farm described in contract between parties of the first part and R. W. Curtis and Laurie Curtis, his wife, dated January 16, 1946.

"Parties of the first part hereby give and grant unto party of the second part the free and untrampled right to go over and upon said premises as may be necessary or convenient by themselves and agents or contractors to cut and remove said

timber, for a period of one year from February 1, 1946.

"It is understood and agreed that there is a certain amount of timber now felled upon said land and the $750.00 already paid is payment for all said down timber and if no other trees are cut then this contract is at an end when said timber is removed from the premises.

"If on the other hand more timber is cut and removed then and in that case party of the second part shall furnish to parties of the first part a complete scale of all timber now down upon said premises and of all timber later removed.

"Party of the second part shall have the right to remove such amount of timber over and above the amount already down to equal 300,000 feet and if timber more than 300,000 feet is removed then party of the second part agrees to pay parties of the first part the sum of $2.50 per Thousand for all said timber above 300,000 feet, the same to be paid immediately upon the conclusion of said removal.

"Party of the second part further agrees to follow good logging practices and as to fire and snags to conform to the laws of the State of Oregon and the requirements of the State Forester."

On the 16th day of January, 1946, the premises were sold by Niess and his wife to R. W. Curtis and Laurie Curtis, his wife. The Curtises accepted the title to the property subject to the aforementioned contract, and on August 2, 1946, for a paid consideration of $100.00, partially extended in writing the contract, the applicable portion of said extension following:

"We hereby extend the time for the removal of timber mentioned in a contract entered into the 17th day of January, 1946, by and between David Neiss and Elizabeth Neiss his wife; parties of the first part and Wiseman Lumber Co., a partnership,

party of the second part. Said time to be extended to November 1, 1947 on the down timber with priveledges of purchasing adjacent standing timber at going ceiling prices at time of removal. Said standing timber to be logged within the above time limit.''

On the 11th day of January, 1947, plaintiffs sold the aforementioned contract to defendant for the sum of $1,000.00, payable $250.00 down and the balance at the rate of $2.50 per thousand until the balance was paid. The following writings, evidencing such sale, were made:

''Received of O. R. Wiseman a contract for Timber signed by David and Elizabeth Neiss and an extention of Time until Nov. 1, 1947 on said contract signed by R. W. Curtis and wife. Also a Release from A. W. Com on fell and bucked timber on said R. W. Curtis place on Crabtree Creek.

''/s/ H. Mitchell''

''Received of H. Mitchell the sum of Two Hundred and fifty dollars ($250.00) as down payment on Timber on the place on Crabtree Creek known as The R. W. Curtis farm.

''Balance to be paid at the Rate of $2.50 per M until the further sum of $750.00 (Seven Hundred and fifty Dollars) is paid. This sum to be full payment for 300,000 feet of Timber as per Terms of a contract between David Neiss and wife and The Wiseman Lumber Co. dated Jan 16, 1947 and further extended by a contract between R. W. Curtis and wife until Nov. 1, 1947.

''Wiseman Lumber Co.,
''By /s/ O. W. Wiseman''

Plaintiffs, in their complaint, allege the existence of the hereinbefore quoted contract, and that the same was extended to November 1, 1947, and,

''That on or about January 11, 1947, while the above contract was in full force and after same had

been extended to November 1, 1947, as above alleged, plaintiffs sold and assigned all of their interests in and to said contract and the timber described therein to the defendant for which sale and assignment the defendant promised and agreed to pay the plaintiffs the sum of $1000.00 by paying to the plaintiffs the sum of $250.00 at the time of the sale and assignment, receipt of which is acknowledged and the balance of $750.00 before November 1, 1947.''

It is then alleged that defendant failed to pay the balance of $750.00 due under such contract, for which sum judgment is demanded against defendant.

Defendant admitted, in his answer, that plaintiffs sold their interest in the contract to the defendant for the sum of $1,000.00, and in his further answer and defense, alleges:

''That on or about January 11, 1947, plaintiffs and defendant entered into an agreement wherein and whereby plaintiffs agreed to sell and defendant agreed to purchase 300,000 feet of fir timber situated on the real premises referred to in the complaint, and as a part of said transaction the parties agreed that defendant would have until November 1, 1947 in which to remove said timber, and as a part of said transaction the parties agreed that plaintiffs would see that the defendant would receive an option to purchase the remaining timber on the real premises described in plaintiffs' complaint at the purchase price of $2.50 per thousand, and in consideration of all of said agreements defendant agreed to pay until plaintiff[s] the sum of $1,000.00, of which sum $250.00 was paid at the time, with the remaning $750.00 to be subsequently paid.''

He then alleges that the consideration flowing from plaintiffs to defendant fully and completely failed in

that the right to remove 300,000 feet of timber was not in fact extended to November 1, 1947, but was terminated prior to that date, and that defendant had no right to remove all of the timber up to November 1, 1947. Defendant further avers that the consideration for the agreement further failed in that plaintiffs did not obtain an option to purchase the remaining timber on the Curtis farm.

Defendant further alleges, "* * * that the right to remove said 300,000 feet of timber from the real premises described in the complaint was not in fact extended to November 1, 1947, but in fact terminated some time prior to that date and defendant was prevented from removing said timber by the fact that such extension was not in effect in accordance with the agreement."

Plaintiffs, in their reply, deny that "said contract was not in fact extended to November 1, 1947," and admit that "plaintiff[s] and defendant entered into an agreement wherein and whereby the plaintiffs agreed to sell and defendant agreed to purchase 300,-000 feet of fir timber situated on the real premises referred to in the complaint, and as a part of said transaction the parties agreed that defendant would have until November 1, 1947 in which to remove said timber, but deny all of the other allegations set forth in said paragraph I."

At the conclusion of plaintiffs' case, defendant moved for a nonsuit and at the close of the case moved for a directed verdict, both motions being denied.

The burden of proof was upon plaintiffs to prove by a preponderance of the evidence, as per their complaint, that the contract in question was extended. The extension hereinbefore quoted was not an extension

of the entire contract which gave the defendant the right to remove 300,000 feet of timber, whether down or not, but extended only the right to remove the *down* timber to November 1, 1947, and did not extend the right to cut standing timber at the rate of $2.50 per thousand, but permitted the purchaser to purchase standing timber at going ceiling prices at the time of removal. Mr. Wiseman, of plaintiffs, admitted while on the witness stand that it was the intention of the parties that Mr. Mitchell was to get 300,000 feet of timber whether it was down or standing, bearing out the admission of plaintiffs to that effect in their reply. The evidence shows that there was not more than 150,000 feet of down timber, of which only 75,000 feet was merchantable. The plaintiffs having failed to prove that the original contract was extended, defendant, thereby being deprived of a considerable number of feet of down timber and the right to cut standing timber for $2.50 per thousand, was entitled to a nonsuit and a directed verdict.

■ Defendant, in his answer, claims a refund of the down payment of $250.00 from plaintiffs on the ground that there was a total failure of consideration. The evidence does not bear this out. The contract and extension agreement assigned to defendant was a subsisting contract which not only gave defendant the right to remove down and standing timber for a period of time but also the right to cut standing timber for an additional period of time. The record further shows that the defendant received $500.00 from a Mr. Larkowski, who had purchased the real property in question, for certain asserted claims which defendant had in the timber arising out of the contract between the parties hereto, which also precludes the claim that

there was a total failure of consideration moving from plaintiffs to defendant.

At most, there was a partial failure of consideration, and defendant is in no position to counterclaim for the down payment. Since he affirmed the contract, his remedy, if any, would be for breach of contract.

The judgment of the lower court is reversed.